UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Marvin Chambers, | ) | CASE NO. 1:11 CV 1337 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Pitt Ohio Express, LLC, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. 24). This is an employment discrimination case. For the reasons that follow, the motion is GRANTED.

## FACTS

Plaintiff, Marvin Chambers, brings this action against defendant, Pitt Ohio Express, LLC, alleging wrongdoing in connection with plaintiff's termination from employment with defendant.

A. Driving record

Plaintiff begin working for defendant as a truck driver in March of 2004. Plaintiff is

1

African-American. Plaintiff remained employed by defendant until September 16, 2010, on which date defendant terminated plaintiff based on his poor driving record. According to defendant, plaintiff's driving record includes the following incidents:

- On May 1, 2004, plaintiff drove into a security gate;

- On June 8, 2005, plaintiff ran into a deer;

- On September 8, 2005, plaintiff was cited for turning right on a red light;

- On October 8, 2005, plaintiff ran off the road;

- On May 6, 2006, plaintiff "went too far" into the left lane and ran into the cement wall;

- On July 22, 2006, plaintiff ran into the vehicle in front of him[1];

- On October 8, 2007, plaintiff was involved in a "yard accident;"

- On November 29, 2007, plaintiff was involved in a "wire incident;"

- On November 18, 2009, plaintiff again hit a deer; and

- On May 21, 2010, plaintiff was cited by the Ohio State Highway Patrol and placed "out of service," for driving while fatigued.

Defendant disciplined plaintiff for his driving record on the following occasions:

- On October 19, 2005, defendant issued a disciplinary warning as a result of plaintiff's right on red fine;

- On November 10, 2005, defendant issued a disciplinary warning as a result of plaintiff's "run off the road" incident;

- On August 18, 2006, defendant suspended plaintiff for three days without pay as a result of the "rear end" accident;

---

[1] Plaintiff claims that he and defendant were cleared of any wrongdoing in a civil matter brought by the driver of the other vehicle.

2

- On March 30, 2010, plaintiff received a verbal warning for failing to check his trailer;

- On May 21, 2010, plaintiff was suspended for three days without pay as a result of the Ohio State Highway Patrol incident; and

- On June 25, 2010, defendant issued plaintiff a final written warning.

Thereafter, on September 9, 2010, plaintiff backed into an occupied vehicle in the driveway of a customer of defendant. Following this incident, defendant terminated plaintiff.

B. Offensive statements

According to defendant, he was the "subject of racial jokes and other offensive comments." Defendant claims that he reported the following statements to management, including Mike Todd, plaintiff's terminal manager and boss:

- In 2005, a co-worker repeatedly made the following comment when plaintiff entered the room, "Oh, black man here, hold your wallet, hold your wallet;"

- In 2007 or 2008, a former co-worker commented, "Oh, that truck says no blacks allowed, no blacks allowed to drive that truck." Plaintiff claims that the statement was made in front of his supervisor, Joseph Macivor; and

- After plaintiff offered a piece of watermelon to a co-worker, the co-worker commented to Mike Todd, "Hey Mike. I just stole watermelon from a black man."

Plaintiff also claims that following statements were made, although plaintiff does not claim to have reported these statements:

- A co-worker commented, "Yeah. At one point I would have two or three of you hanging in my backyard;

- Another co-worker made a comment about "going down to get some good 'ol boys to come up and take care of [plaintiff];"

- A co-worker commented that defendant was "the whitest black man he knows" because defendant "don't talk black;" and

3

- An employee stated, "why do you have to have a white car and a white wife?"

In addition, plaintiff notes that customers were surprised that he worked for defendant because they did not believe that defendant hired African-American drivers.

C. Shift change

In 2008, defendant experienced layoffs.  Prior to the layoffs, plaintiff held the position of City P&D Driver.  A City P&D Driver works days and performs local pick-ups and deliveries.  This position enabled plaintiff to be home with his son in the evenings.  In late 2008, defendant informed plaintiff that he had to switch positions from City P&D Driver to a Line Haul position.  A Line Haul position required that plaintiff work into the evenings.  Plaintiff had recently acquired custody of his son, and he indicated that he could not work Line Haul because he needed to be home with him in the evenings.  Defendant informed plaintiff that if he did not take the Line Haul position, he would lose his job.  According to plaintiff, defendant twice accommodated employees with similar custody arrangements.  These two employees, Todd Bachman and Dan McGee, are Caucasian.   Plaintiff claims that he reminded defendant of these accommodations, but was told that the arrangement "didn't apply" to him.  Plaintiff accepted the Line Haul position.

After plaintiff's termination, he brought this lawsuit in state court asserting four claims for relief.  Count one is a claim for "race discrimination."  Count two is a claim for wrongful termination based on race.  Count three alleges hostile work environment and count four alleges intentional infliction of emotional distress.  Counts two and three are asserted under O.R.C. § 4112.02.  Defendant removed this matter to this Court based on diversity of citizenship.

Defendant moves for summary judgment and plaintiff opposes the motion.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard. See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

> depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**<u>ANALYSIS</u>**

Defendant moves for summary judgment on all claims asserted against it in the complaint.  The Court will address the claims in the same order presented by defendant in its

brief.

       1.      Race discrimination and wrongful termination (counts one and two)[2]

Defendant argues that it is entitled to summary judgment on counts one and two. According to defendant, plaintiff's unsafe driving record is a legitimate non-discriminatory reason for his discharge and there is no evidence that the reason for the discharge is mere pretext. Plaintiff responds that the comments referenced above constitute direct evidence of discrimination. In the alternative, plaintiff claims that there is evidence of pretext.

As an initial matter, the Court rejects plaintiff's argument that he has presented direct evidence of discrimination. As the Sixth Circuit recognizes, "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003). *See also*, *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010)(statements unrelated to the decision to terminate plaintiff do not constitute direct evidence). Moreover, "[d]irect evidence is that evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002). Here, plaintiff does not identify any individual involved in the decision-making process regarding his termination. Although plaintiff identifies Joseph Macivor and Mike Todd, two individuals referred to as "bosses," there is no indication that either individual took part in the decision to terminate plaintiff. Even if these individuals are decision-makers, plaintiff does not attribute any

---

[2]     Both parties agree that the Title VII framework applies to claims asserted under O.R.C. §4112. See also, *Carter v. University of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003).

7

allegedly racist statement to either Macivor or Todd. Moreover, no statement identified by plaintiff "require[s] the conclusion that unlawful discrimination was a motivating factor" in defendant's actions. Thus, the Court finds that plaintiff fails to present direct evidence of discrimination.

> To establish a claim of discrimination indirectly, *i.e.*, by circumstantial evidence, a plaintiff must demonstrate (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than he. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir. 2010). With regard to the fourth prong, plaintiff may alternatively show that he was replaced by a person outside of the protected class. *Carter v. Toledo*, 349 F.3d 269, 273 (6th Cir. 2003).

In this case, plaintiff argues that he suffered two adverse employment actions. Specifically, plaintiff claims that his termination and transfer from City P&D Driver to a Line Haul position constitute adverse employment actions. The Court will address each in turn.

    A.  Termination

Defendant concedes that plaintiff establishes a *prima facie* case of discrimination. The burden thus shifts to plaintiff to prove by a preponderance of the evidence that the legitimate reason offered by defendant is not its true reason, but was a pretext for discrimination. *Corell v. CSX Transp. Inc.,* 378 Fed.Appx. 496 (6th Cir. 2010) (citations omitted). "A plaintiff may rebut a defendant's legitimate, nondiscriminatory reason and demonstrate pretext with one (or more) of three showings: (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Algie v.*

*Northern Kentucky University*, 2012 WL 34373 (6th Cir. Jan. 9, 2012) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), overruled on other grounds, *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir.2009)).

Plaintiff claims that he points to sufficient evidence to create a genuine issue of material fact as to whether defendant's proffered reason for terminating plaintiff is pretext for intentional discrimination. It appears from plaintiff's brief that he is claiming that defendant's reason for terminating plaintiff is not the "actual reason" for the termination. According to plaintiff, he was suspended after the July 22, 2006 accident, even though a civil court ultimately "cleared" plaintiff of any "fault or liability." In addition, plaintiff claims that defendant never questioned him after the Ohio State Highway Patrol cited plaintiff and placed him "out of service." In response, defendant argues that plaintiff's personal belief that he should not have been disciplined for these two driving incidents does not show pretext. Rather, plaintiff fails to establish that defendant did not honestly believe that these incidents warranted discipline. In addition, defendant points out that there are numerous, well-documented reports from plaintiff himself regarding a long list of incidents demonstrating plaintiff's poor driving record. Plaintiff does not dispute that the incidents occurred. Defendant also points out that the Ohio Highway Patrol placed plaintiff out of service. Again plaintiff does not dispute that this incident occurred, rather he objects only because defendant did not discuss the incident with plaintiff before imposing discipline.

Upon review, the Court agrees with defendant and concludes that plaintiff fails to present sufficient evidence from which a trier of fact could conclude that defendant's proffered reason for termination is pretext for intentional race discrimination. As defendant points out, plaintiff

9

does not dispute that he was involved in a great number of driving incidents while employed by defendant. In fact, with regard to a number of these incidents, plaintiff makes no argument whatsoever. Moreover, although plaintiff claims that a civil court "cleared" him of "fault," he does not dispute that he rear-ended another vehicle, which resulted in a lawsuit. Nor does plaintiff dispute that an Ohio Highway Patrol officer placed plaintiff out of service. Rather, plaintiff generally claims that he simply should not have been disciplined for these incidents. Plaintiff fails, however, to tie any of his subjective beliefs to intentional race discrimination.[3] Accordingly, the Court finds that plaintiff fails to produce sufficient evidence of pretext to survive summary judgment with respect to his wrongful termination claim.

        B.      Position transfer

Defendant argues that plaintiff fails to establish a *prima facie* case of discrimination based on the position transfer. According to defendant, such a transfer does not constitute an "adverse employment action," for purposes of *McDonnell Douglas*. Plaintiff claims that a transfer satisfies this element of the test.

In *Hollins v. Atlantic Co.*, 188 F.3d 652 (6th Cir.1999), the Sixth Circuit explained a materially adverse employment action as follows:

> [A] materially adverse change in the terms and conditions of employment must be more

---

[3] Plaintiff makes passing reference to the aforementioned racial comments made by plaintiff's co-workers. Again, however, these comments are not relevant in that none of them appear to have been made by a decision-maker or any individual involved in any way in the decision to terminate plaintiff. *See, e.g.*, *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344 (6th Cir. 1998)(noting in an ADEA claim that remarks made by individuals who did not play a meaningful role in the decision to terminate plaintiff are not relevant for purposes of analyzing pretext).

> disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id*. at 662 (citation omitted).  The Sixth Circuit has "consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable." *Novotny v. Elsevier*, 291 Fed.Appx. 698 (6th Cir. 2008).

Upon review, the Court finds that plaintiff fails to present sufficient evidence from which a jury could conclude that defendant's change in position constituted an adverse employment action.  Plaintiff relies on *Spees v. James Marine, Inc.*, 617 F.3d 380 (6th Cir. 2010), in support of his position that a shift-change can constitute an adverse employment action.  In *Spees*, the plaintiff was reassigned to the night division, which impacted her ability to raise her daughter.  The Sixth Circuit held that a question of fact existed as to whether the shift change constituted an "adverse employment action."  In *Spees*, however, the Court also noted that plaintiff was required to change divisions to a position that was less challenging and required fewer qualifications.  In contrast, the plaintiff in this case presents no evidence regarding any differences between a City P&D Driver and a Line Haul position.  Nor does plaintiff even describe the degree to which his hours changed as a result of the transfer.  Plaintiff simply indicates that the change "interfered" with his ability to be home in the evenings.  Based on the evidence presented, the Court finds that plaintiff fails to establish that the transfer constituted a materially adverse employment action.

Plaintiff fails to establish a *prima facie* case for an additional reason.  Namely, plaintiff does not demonstrate that a similarly situated employee outside the protected class was treated

more favorably.  At best, plaintiff points out that two Caucasian employees, Bachman and McGee, were given "special provisions...to be home in the evening," and that these two employees were given "start times doing P&D City."  Defendant provides evidence that it was experiencing layoffs during the time plaintiff's transfer occurred and that no layoffs were occurring at the time the other two employees were permitted to alter their schedules.  In fact, plaintiff himself testified that Bachman's scheduling accommodation occurred "years" before plaintiff's request.  In all, plaintiff fails to establish that Bachman and McGee were similarly situated to plaintiff in all material respects.  Accordingly, plaintiff fails to establish a *prima facie* case for this additional reason.[4]

      2.      Hostile work environment

To succeed on a claim of a racially hostile work environment, a plaintiff must demonstrate that (1) he belonged to a protected group, (2) he was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.  *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011).  *See also*, *Parks v. City of Chattanooga*, unreported, 74 Fed.Appx. 432, 440 (6th Cir. July 16, 2002) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999)).

In this case, defendant argues that any race-based comments made to plaintiff were not so severe or pervasive so as to alter the terms of plaintiff's employment.  Rather, defendant argues

---

[4] Even if plaintiff could somehow establish a *prima facie* case, for the reasons set forth above with respect to plaintiff's wrongful termination claim, plaintiff fails to establish pretext.

that the statements were isolated.  Defendant further claims that the statements were offensive utterances and did not involve physical threats or humiliation.  It is further argued that the comments were infrequent and were not made with hostility or aggression.  In addition, defendant claims that plaintiff does not present evidence that the comments interfered with his ability to perform his job.  In response, plaintiff argues that the comments were severe and pervasive.  Specifically, plaintiff points out that at least one of the comments was threatening.

In determining whether there was a hostile or abusive work environment, the court looks to the totality of the circumstances.  *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).   In particular, the court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, (1993)).  Accordingly, harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment to create an abusive working environment."  *Broska v. Henderson,* 70 Fed. App. 262 (6th Cir. June 30, 2003) (citing *Harris,* 510 U.S. at 21).  Moreover, the test "has both an objective and subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive."  *Id.*

As an initial matter, the parties dispute whether unreported comments made by co-workers or customers can support his racial harassment claim.  According to defendant, the specific comments were never reported and plaintiff presents no evidence demonstrating that defendant should have known of the comments.  Plaintiff argues that the law does not require

13

that plaintiff report the comments and that he need only demonstrate that defendant should have known of the harassment.  Assuming *arguendo*, that these comments may be considered, the Court finds that, based on a totality of the circumstances, the comments are not sufficiently "severe" or "pervasive" to create a jury question on plaintiff's racially hostile work environment claim.  Plaintiff identifies only a handful of statements occurring over the course of his six-and-a-half year employment.  Moreover, the statements were not sufficiently "severe" enough to support plaintiff's claim.  Although the statements are insensitive and bigoted, *i.e.* "black man here, hold your wallet," or "I just stole watermelon from a black man," the statements were not physically threatening or humiliating.[5]  The Court finds that these statements are more akin to "offensive utterances."  *See, e.g.*, *Williams v. CSX Transportation*, 643 F.3d 502, 513 (6th Cir. 2011).  In addition, plaintiff does not point to any evidence suggesting that the comments interfered with his work performance.  In all, the Court finds that defendant is entitled to judgment as a matter of law.

        3.        Intentional infliction of emotional distress

Defendant argues that it is entitled to summary judgment on this claim because plaintiff fails to point to evidence that he suffered any severe or debilitating emotional distress.  According to defendant, the evidence shows that plaintiff has been able to maintain a home improvement business, work for a new employer on a full-time basis, and that he rarely missed

---

[5] Plaintiff argues that one co-worker said that he was going to go "down and get some good 'ol boys to come up and 'take care' of defendant."  According to plaintiff, this remark was physically threatening.  Plaintiff, however, did not report this remark to a supervisor, even though plaintiff had reported other remarks.  Accordingly, the Court does not find this remark, either alone or in combination, to be sufficient enough to create a question of fact.

14

work while employed by defendant. In response, plaintiff presents no evidence in support of this claim. Rather, plaintiff simply points out that Ohio recognizes such a claim in the employment context. Plaintiff then argues only that there is a genuine issue of material fact based on the "racially charged comments encountered by [plaintiff] during his employment...coupled with the impact of his position change." According to plaintiff, these actions caused him to suffer emotional distress.

Upon review, the Court finds that defendant is entitled to summary judgment. Plaintiff fails to present any evidence that he suffered any emotional distress. As such, he is not entitled to relief.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 3/23/12